IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Thomas Mitchell Stutts,                )
      Plaintiff,                        )    Case No. 8:11-cv-00191-TMC-JDA
                               )
      v.                                )    **REPORT AND RECOMMENDATION**
                               )    **OF MAGISTRATE JUDGE**
Robert M. Stevenson, III,              )
      Defendant.                        )
_____)

This matter is before the Court on Respondent's motion for summary judgment.

[Doc. 76.]  Petitioner is a state prisoner who seeks relief pursuant to Title 28, United States

Code, Section 2254.  Pursuant to the provisions of Title 28, United States Code, Section

636(b)(1)(B) and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to

review post-trial petitions for relief and submit findings and recommendations to the District

Court.

Petitioner filed this Petition[1] for writ of habeas corpus on January 21, 2011.[2]  [Doc.

1.]  On January 6, 2012, Respondent filed a motion for summary judgment and a return

---

[1] Petitioner's original filing was not on a court-approved form.  [Doc. 1.]  Accordingly, on February 4, 2011, the Honorable Robert S. Carr issued an Order directing Petitioner to submit an amended petition on the standard § 2254 form.  [Doc. 6.]  Instead, on March 1, 2011, Petitioner filed a motion to stay, indicating this case was a "miscellaneous appeal" of the South Carolina Supreme Court's order and that he was not submitting a petition for a writ of habeas corpus pursuant to § 2254 because he had many other issues to raise. [Doc. 12.] On March 18, 2011, the undersigned issued a Report and Recommendation, recommending the case be dismissed without prejudice and without issuance and service of process because the Court lacks jurisdiction over the "miscellaneous appeal." [Doc. 23.] Subsequently, Petitioner filed objections to the Report and Recommendation [Doc. 25] and a motion "to have 180 days to prepare his federal habeas corpus relief available under 28 U.S.C. § 2254" so that he could keep the same civil action number [Doc. 28].  On April 22, 2011, the Honorable Sol Blatt, Jr., declined to adopt the Report and Recommendation and instead granted in part Petitioner's motion for an extension of time to submit a proper § 2254 petition, granting Petitioner 60 days to submit a proper petition.  [Doc. 29.]  Subsequently, Petitioner filed an Amended Petition [Doc. 32], motions for extension of time to submit the remainder of his grounds for relief [Docs. 33, 42], and multiple supplemental filings adding grounds for relief to his Amended Petition [Docs. 38, 40, 41].

[2] The Petition is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the possible filing dates in the light most favorable to Petitioner, this action was filed on January 21, 2011.  [Doc. 1-1 (envelope marked received by the prison mailroom on January 21, 2011).]

and memorandum. [Docs. 74, 75, 76.] On January 9, 2012, in accordance with an Order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir.1975), Petitioner was advised to respond to the motion for summary judgment and of the possible consequences if he failed to respond adequately to Respondent's motion. [Doc. 77.] Despite this explanation, Petitioner elected not to respond to the motion. Because Petitioner is proceeding pro se, the Court filed a second Order on February 23, 2012, granting Petitioner through March 14, 2012 to file his response to the motion for summary judgment. [Doc. 82.] On March 16, 2012, Petitioner's response was filed. [Doc. 85.] Petitioner then requested an extension of time to complete his response [Doc. 87], which the Court granted [Doc. 89]. Since then, Petitioner has filed numerous supplemental responses to the motion for summary judgment [Docs. 91, 95, 98, 105, 106, 107], which the Court has considered in making its recommendation. Having carefully considered the parties' submissions and the record in this case, the Court recommends that Respondent's motion for summary judgment be granted and the Petition be denied.

## **BACKGROUND**

Petitioner is currently incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections pursuant to orders of commitment from the Clerk of Court for Lexington County. [Doc. 32 at 1; *see* App. 437.[3]] At the July 1994 term of General Sessions, the Lexington County Grand Jury indicted Petitioner for murder, assault with intent to kill, and possession of a firearm during commission of or attempt to commit violent crime. [App. 678–83.] Represented by Jack B. Swerling and Heather L. Smith, on

---

[3] The Appendix can be found at Docket Entries 74-1 through 74-6.

May 27–29, 1997, Petitioner proceeded to trial before the Honorable Joseph A. Wilson, II. [App. 1.] On May 29, 1997, Petitioner was acquitted on the assault with intent to kill charge and convicted on the murder and possession of a firearm during commission of or attempt to commit violent crime charges. [App. 430.] Judge Wilson sentenced Petitioner to five years imprisonment for the possession of a weapon charge and life imprisonment for murder. [App. 437.]

**Direct Appeal**

Petitioner, represented by Joseph L. Savitz, III ("Savitz"), of the South Carolina Office of Appellate Defense, appealed his convictions and sentences to the South Carolina Supreme Court. [Doc. 74-7.] Petitioner raised one issue in an *Anders* brief[4]:

> The judge erred by allowing an arresting officer to testify that he had not been able to test appellant for gunshot residue because "immediately after his arrest, we were served with notice he had retained counsel and we couldn't talk to him or touch him or do any other stuff without consultation with the Public Defender's office."

[*Id.* at 4.] At the same time he filed the *Anders* brief, Savitz submitted a petition to be relieved as counsel. [*Id.* at 8.] In response to a letter advising Petitioner of his right to furnish the Supreme Court with any information he felt was essential to a determination in the direct appeal [Doc. 74-8], Petitioner submitted a pro se brief [Doc. 74-9 at 9–17]. In his initial pro se brief, Petitioner requested an additional 30 days to submit all issues but, at that time, submitted the following issues, quoted substantially verbatim:

---

[4]A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

Court Errors

1.   by allowing impermissible and prejudicial testimony.

2.   by collectively confusing the jury with repeated jury charges and instructions on how to interpret[] these given charges vers[u]s interpretation of state law.

3.   by giving a[n] Allen charge made impermissible depicted by the given events pursua[n]t[] to state law.

4.   The evidence did not support the finding of guilty as charged.

Collateral Constitutional Violations by the State Against the Appella[nt]

1.   denied appellant appointed legal counsel for app[r]oximately 180 days past date of arrest.

2.   denied access to a legal library during the full 3 years and 3 weeks while awaiting trial.

3.   denied evidence favorable to the defense.

4.   denied a suppression hearing.

5.   key police witness for the state gave prejudicial testimony.

Other Issues to be considered, in deciding to grant leave of court.

1.   The South Carolina Department of Corrections policy of controlled movement allows only for maybe if lucky, 4 to 5 hours per week in the prison law library.

2.   The South Carolina Department of Corrections policy of controlled movement denies Appellant access of his choice of Jail House Lawyers.

[*Id.* at 12–13 (internal transcript citations omitted).] On May 26, 1998, Petitioner submitted another pro se brief, alleging the trial court erred:

1. In denying a demand for a speedy trial;

2. In denying appointment of counsel;

3. In denying a motion for a directed verdict;

4. In denying a full *King* charge;

5. In giving a burden-shifting *Allen* charge;

6. In giving an improper *Allen* charge;

7. In giving the jury an inference as to the trial court's opinion of the defense alibi;

8. In denying objections to irrelevant, immaterial, and prejudicial testimony;

9. In allowing the indictments to be given to the jury during deliberations; and

10. In failing to give curative instructions for prosecutorial misconduct which so inflicted the trial with unfairness as to make the resulting conviction a denial of due process.

[*Id.* at 1–5.]

On December 1, 1998, an opinion was filed, dismissing the appeal, granting Savitz's motion to be relieved as counsel, and denying the motion for appointment of new appellate counsel.  [Doc. 74-10.]  Remittitur was issued on January 13, 1999.[5]  [Doc. 74-11.]

---

[5]Petitioner alleges he submitted a motion to alter or amend in response to the dismissal of his direct appeal; however, the Clerk of the South Carolina Supreme Court has no record of any motion to alter or amend being filed.  [*See* Doc. 74-13.]

**PCR Proceedings**

Petitioner, proceeding pro se, filed an application for post-conviction relief ("PCR") on October 28, 1999. [App. 439–87.] In his application, Petitioner alleged the following grounds, quoted substantially verbatim:

(a) My right to Due Process, guaranteed by the Fourteenth Amendment to the United States Constitution and Article I Section 3 of the South Carolina Constitution was violated by the State when I was denied my right to a speedy trial pursuant to the Sixth Amendment to the United States Constitution and Article I Section 14 of the South Carolina Constitution.

(b) I was denied the effective assistance of trial counsel guaranteed a defen[d]ant by the Sixth Amendment to the United States Constitution which is applicable to the State through the Fourteenth Amendment to the United States Constitution, and by Article I Section 14 of the South Carolina Constitution. Additionally, I was denied the effective assistance of counsel statutorily guaranteed a defendant by Section 17-23-60 of the South Carolina Code of Laws to which I have a Due Process Right mandated by Article I Section 3 of the South Carolina Constitution.

(c) I was unable to properly and fully present a defense at my trial due to my lack of knowledge of the constitutionally guaranteed rights, the State Rules of Evidence, Rules of Criminal Procedure, and State Statutory and case law. Additionally, I was unable to fully present a defense due to the States suppression of evidence in violation of my Due Process rights gu[a]ranteed by the Fourteenth Amendment to the United States Constitution and by Article I Section 3 of the South Carolina Constitution. I, maintain that this evidence is newly discovered and entitles me to a reversal of my convictions and a remand of my case for a new trial.

(d) I was denied the effective assistance of appellate counsel, Joseph Savitz, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I Section 14 and Article I Section 3 of the South Carolina Constitution.

[App. 446–84.] With respect to his ground for ineffective assistance of trial counsel, Petitioner alleged the following specific allegations of error, quoted substantially verbatim:

(1) Counsel, Jack Swerling, was ineffective for failing to ensure my rights to a speedy trial were not violated by the State. . . .

6

(2)     Counsel, Jack Swerling, was ineffective for failing to request a <u>Jackson v. Denno</u> hearing to determine the voluntariness of statements made by me at the time of arrest, and for failing to request that the jury be instructed on its determination of the voluntariness of the statement.

(3)     Counsel, Jack Swerling, was ineffective for failing to make a 'motion in Limine' to restrict the presentation of the evidence of the circumstances surrounding the arrest of me as this evidence was irrelevant to the incident for which I was charged.

        Additionally, counsel, Jack Swerling, was ineffective for failing to object to this evidence <u>each time</u> it was presented in order to preserve the issue for appeal.

(4)     Counsel, Jack Swerling, was ineffective for failing to present an expert witness on trajectory and ballistics who could have testified as to the path of each shot fired as well as the direction from which each shot was fired.

(5)     Having allowed evidence of my actions following the incident, coun[s]el, Jack Swerling, was ineffective for failing to present expert psychological testimony on "Post Traumatic Stress Syndrome Disorder", to explain my behavior following the incident.

(6)     Counsel, Jack Swerling, was ineffective for failing to object to Investigator Bloxom's impermissible comment on my alleged past arrest silence and right to counsel in order to properly preserve the issue for appeal.

(7)     Counsel, Jack Swerling, was ineffective for failing to impeach Investigator Bloxom's clearly erroneous, perjurious testimony that a gunshot residue test sample was "<u>not</u>" taken from me, when in fact, a sample "<u>was taken</u>" from me. . . .

(8)     Counsel, Jack Swerling, was ineffective for failing to have the South Carolina Law Enforcement Division perform a gunshot residue test on the sample from me that was submitted to them by the West Columbia Police Department.

(9)     Counsel, Jack Swerling, was ineffective for failing to present favorable witnesses and evidence which would have shown my demeanor (demeanor which was more than favorable) prior to the incident which would have corroborated my testimony, and refuted testimony of the State's sole witness to some of the incident.

(10)    Counsel, Jack Swerling was ineffective for failing to object to hearsay testimony each time it was presented by the State witness Betty Jo Brown in

order to preserve the issue for appeal. The hearsay was improper bolstering of the testimony of the State's sole eyewitness to some parts of the incident.

(11)     Counsel, Jack Swerling, was ineffective for failing to admit State witness Barbara Patton's statement to the police as substantive evidence, after it was identified and used to impeach her inconsistent trial testimony.

(12)     Counsel, Jack Swerling, was ineffective for failing to request a suppression hearing to prevent the admission of the gun into evidence where the gun was seized during a "warrantless" search of "my" temporary residence that violated the Fourth Amendment prohibition against unreasonable searches and seizures.

(13)     Counsel, Jack Swerling was ineffective for failing to object to the admission of States exhibit Number 5, which is a picture of the incident scene taken by Investigator Kelly Bloxom (Assisted by then Lt. but now Capt. Watson) "After" evidence had been removed and you can clearly see that Inv. Bloxom, along with Capt. Watson removed the picture from the base of the lamp before taking the picture in an attempt to lay a bogus foundation as to the path of the bullet, in an attempt to show a bogus trajectory of a bullet (that was "inconclusive" due to damage by analysis and examination in an official report of the South Carolina Law Enforcement Division Forensic Services Laboratory) that (Allegedly) struck the base of the lamp and ricocheted (allegedly) into the couch. . . .

(14)     Counsel, Jack Swerling, was ineffective for failing to expound upon the circumstances of my prior convictions for unlawful use of a telephone. By him not expounding on this prior conviction prejudiced me, for it mislead and confused the jury as to what it was all about. . . .

(15)     Counsel, Jack Swerling, was ineffective for failing to object to the "circumstantial evidence charge", given by the court to the jury where the charge constituted a "burden-shifting instruction" and was misleading.

[App. 470–81 (internal citations omitted) (emphases in original).] The State made a return to the PCR application on March 13, 2000. [App. 488–93.] Subsequently, Petitioner submitted a number of amendments to the PCR application. [*See* App. 497–98; 651–55.] On January 26, 2006, the PCR court held an evidentiary hearing into the matter. [App. 494–648.] Petitioner appeared pro se at the hearing. [App. 494.]

On November 1, 2006, the PCR court issued its decision, denying and dismissing with prejudice Petitioner's PCR application. [App. 649–77.] In its order denying relief, the PCR court listed the ineffective assistance of counsel allegations included in the original PCR application and Petitioner's numerous amendments. [App. 650–55.] As to the December 21, 2005 amendments, the PCR court stated Petitioner alleged trial counsel failed to

a.  let the court know they were not his lawful attorneys, in that they took over the case without official orders of appointment,

b.  provide the Applicant with an arraignment until two years and seven months after arrest,

c.  attend the Applicant's arraignment,

d.  provide the Applicant with arrest warrants until the arraignment,

e.  provide the Applicant with the indictments until two years and seven months after arrest,

f.  recuse himself (Mr. Swerling) and should have done so because the Applicant previously fired him when he was his "street attorney" and thus his representation constituted a conflict of interest,

g.  point out to the court that the State did not give the Applicant a bond hearing until four and one half months after his arrest,

h.  provide the Applicant with a bond hearing,

i.  accept the Applicant's decision to pursue an arraignment and failed to personally appear, forcing another attorney on the Applicant, which was a conflict because that attorney, Richard Harpootlian, was the chief prosecutor against him on his prior conviction for unlawful use of the telephone,

j.  point out the Applicant was prejudiced when the government did not appoint a replacement attorney after relieving his prior attorney, Steven Soltis,

k.  provide discovery until sixteen and one half months after arrest and then failed to provide full discovery,

l.  ever provide the Applicant with complete discovery,

m.  to let the court know the Applicant did not receive a preliminary hearing until three and one half months after his arrest,

9

n.     to determine what evidence the State had,

o.     point out to the court that the Applicant's preliminary hearing came after his indictments,

p.     point out to the court that the Applicant was not provided an arraignment during almost one year while he was represented by prior counsel,

q.     point out that the Applicant was not provided with arrest warrants during nearly one year of the case,

r.     point out to the court that the Applicant was not provided with indictments during nearly one year of case,

s.     point out to the court that prior counsel failed to file a speedy trial motion,

t.     point out to the court that Mr. Delgado was not the Applicant's lawful attorney,

u.     point out to the court that Mr. Delgado quit; never filed a speedy trial motion; never filed for arraignment; never provided the Applicant with arrest warrants; never provided him with indictments, a bond hearing, or a preliminary hearing; only provided partial discovery and provided that only seven months after quitting the case,

v.     present favorable witnesses except for the Applicant,

w.     offer or produce any exhibits,

x.     allow the Applicant a jury of the Applicant's peers, rather than counsels' peers,

y.     advise the Applicant of the defense's trial strategy, and

z.     advise the Applicant that Ms. Tolar (Smith) would be participating and allowing her to participate over the Applicant's objections.

[App. 651–52.] The PCR court listed the following additional grounds for relief, which were included in Petitioner's December 22, 2005 amendments:

1.     Speedy trial violation, taking away the Applicant's presumption of innocence.

2.     Ineffective assistance of trial counsel, in that counsel failed to:

    a.     make any motions to suppress any evidence,

    b.     request a voluntary manslaughter charge,

    c.     have cab driver Nitin Lalu Chauhan testify or submit his written statement at trial,

    d.     offer testimony or statement of psychiatrist Dr. John Dewitt at trial,

e.   offer testimony of the cab driver who took Stutts to the alleged "standoff" at trial,

f.   offer testimony of a brother and sister beside the church at trial,

g.   offer testimony of Pam Gettys at trial,

h.   offer testimony of Lee Barry at trial,

i.   offer probative photos into evidence,

j.   offer probative police statements into evidence,

k.   object to the admission of bullet allegedly fired from the gun,

l.   object to police not doing gunshot residue test on Barbara Patton,

m.   demonstrate that Betty Jo Brown's testimony matched the Applicant's,

n.   object that the Applicant could not hear or see at trial,

o.   object to the Applicant being drugged by the State at the time of the trial with Vistuvil,

p.   offer testimony of the Applicant's sister, who was in the courtroom during trial,

q.   request jury instruction regarding voluntariness of the Applicant's statements,

r.   request a self-defense charge,

s.   object to a note by the victim because it violated the confrontation clause,

t.   remain for the polling of the jury and sentencing (Mr. Swerling),

u.   present psychiatric and trajectory experts,

v.   object to prejudicial news story during trial,

w.   object to a sticker placed on a court exhibit and failed to submit an accurate diagram that was in hand,

x.   object to police and medical officials for their contributory negligence in victim's death,

y.   advise the Applicant of the possibility of an <u>Alford</u> plea,

z.   object to improper instruction given to the deadlocked jury,

aa.   contemporaneously object to a note,

bb.   object to a closing argument to the jury that "we are all hunters," appealing to the juror's self-interests, and

cc.   to ensure a complete colloquy on the record regarding the Applicant's right to remain silent,

rendering the Applicant's waiver of his rights unknowing and involuntary.

[App. 652–53.] The PCR court listed the following additional grounds for relief, which were included in another set of amendments dated December 22, 2005:

1. Ineffective assistance of trial counsel, in that counsel failed to:
   a. produce favorable witnesses other than the Applicant,
   b. produce exhibits,
   c. allow the Applicant to pick an impartial jury of his peers rather than the victim's peers,
   d. allowing the Applicant to know about trial strategy,
   e. advise the Applicant that Tolar (Smith) would be participating in the trial and allowing her to participate over his objection (Mr. Swerling),
   f. cross-examine witnesses who were in the courtroom including Dr. Morgan, Dr. Montgomery, Pamela Gettys, James Rhodus, Lee Barry, and Nitin Chauhan,
   g. request a mistrial when an article appeared in The State newspaper on May 28, 1994, which was brought to their attention by Mr. Stutts,
   h. request jury sequestration because of the media coverage,
   i. file a Denno motion and motion in limine or hearing to suppress the illegally obtained gun,
   j. allow the Applicant to see Court Exhibit #1 before trial or during trial,
   k. submit Dr. Dewitt's prior statement that the Applicant was incompetent to stand trial,
   l. offer Dr. Dewitt's testimony regarding the Applicant's prior or present incompetency or post-traumatic stress disorder,
   m. offer testimony from former attorney Soltis regarding his decision to hire Dr. Dewitt,
   n. request a Blair hearing,
   o. object to the solicitor using the indictments as evidence,
   p. advise the Applicant that the solicitor would be able to close last if the Applicant took the witness stand,

q.    move to suppress State's Exhibits ## 1-17,
r.    object to the solicitor saying the State was represented by the Judge, and
s.    object to the solicitor equating charging documents with evidence.

2.    Ineffective assistance of appellate counsel in the counsel failed to raise the judge's errors in allowing the solicitor to use the indictments as evidence and the judge's error in making contradictory statements.

[App. 653–54.] The PCR court listed the following additional grounds for relief, which were included in Petitioner's January 12, 2005[6] amendments:

1.    Ineffective assistance of counsel in that counsel failed to:
a.    advise the Applicant regarding plea bargaining,
b.    have investigator Joe Coving testify as an expert on investigation as to what transpired at the crime scene,
c.    fully investigate the case to prepare a cogent defense,
d.    request a self-defense charge when the evidence supported charge
e.    visit the Applicant with adequate frequency and discuss significant aspects of the case with the Applicant (Mr. Swerling),
f.    present any trajectory expert or evidence,
g.    develop evidence to support the theory that the victim was killed by her mother,
h.    present testimony of Joe Coveno to show blood on the carpet came from the victim's nose and mouth, not a gunshot wound to her head, and that the gunshot came from behind and not while victim was lying down,
i.    present testimony of cab driver the Applicant hired to go to the scene and wait while he was

---

[6]The Court notes the PCR court listed these amendments as being dated January 12, *2005.* However, because Petitioner's other amendments were filed between December 21, 2005 and January 13, 2006, these amendments were most likely dated January 12, *2006.* The date of the amendments, however, is irrelevant to the Court's analysis because the PCR court considered and this Court considers all amendments Petitioner filed in his PCR action, regardless of the date of the amendments.

<div style="margin-left:2em;">

inside, which testimony could have negated the theory of murder,

j.     call Sonny James as a witness to testify regarding the Applicant's mood and sobriety before the crime and to testify regarding events on the weekend before the crime,

k.     subpoena the victim's phone records to show the victim called 30 times on Friday to demonstrate the victim was upset, not the Applicant,

l.     present hearsay testimony from the Applicant's sister regarding what Sonny James said about the Applicant's mood,

m.     demonstrate the victim fired the revolver previously in the bedroom,

n.     object to photo evidence on the ground that the police changed the crime scene and thus the photos did not accurately reflect the crime scene,

o.     cross-examine the State's witnesses to demonstrate the shooting could have occurred as the Applicant described,

p.     impeach Barbara Patton with a statement she made to police about slamming a door where she testified differently at trial, and

q.     recognize that the lampshades from the crime scene were an integral part of the defense even after the Applicant so advised (Mr. Swerling).

</div>

[App. 654.]  Finally, the PCR court listed the following additional grounds for relief, which were included in Petitioner's January 13, 2006 amendments:

<div style="margin-left:2em;">

1.     Ineffective assistance of counsel in that counsel failed to:

a.     bring out statements the Applicant made at the "standoff," asking police to get the victim to the scene, which would have negated murder,

b.     object to the Applicant's out-of-court statements at the standoff,

c.     impeach Bloxom for saying the Applicant gave him the weapon where other evidence was that it was found during search,

d.     move to suppress the gun as the fruit of a warrantless search,

e.     explain the circumstances in which each bullet was fired from the victim's weapon,

</div>

f.    ensure the Applicant could hear the entire trial (Ms. Tolar),

g.    present evidence the victim's back door was used as an entrance to show the victim let the Applicant inside the home,

h.    demonstrate the Applicant was on mood or mind altering drugs during trial and had difficulty understanding the trial and was incompetent because of the medications,

i.    show the Applicant had a 22 year valium habit and Dr. Frank Harrison's illegal support of the habit,

j.    advise the Applicant he had a right not to testify and was entitled to a jury instruction if he did not testify, and

k.    advise the Applicant that he would give up his Fifth Amendment right by taking the stand and failing to ensure the court engaged the Applicant in a colloquy regarding his Fifth Amendment right.

[App. 655.]

The PCR court addressed each ground individually and went on to state:

> Based on all the foregoing, this Court finds and concludes Applicant has not established any constitutional violations or deprivations before or during his trial and sentencing proceedings. Counsel was not deficient in any manner, nor was Applicant prejudiced by counsel's representation. Therefore, this application for PCR must be denied and dismissed with prejudice.

[App. 676.] Petitioner subsequently filed a motion to alter or amend, dated December 7, 2006. [Doc. 74-14.] On December 28, 2006, the PCR court denied the motion to alter or amend. [Doc. 74-15.] Petitioner filed another motion to alter or amend on December 25, 2006, which the PCR court found to be untimely in an order dated February 13, 2007. [*See* Doc. 74-16 at 1.]

On March 5, 2007, Petitioner appealed the denial of his PCR application, indicating he was appealing the November 2006 and December 28, 2006 orders. [*See id.*] On March 9, 2007, Petitioner filed another notice of appeal, indicating he was appealing the February 13, 2007 order. [*See id.* at 2.] The South Carolina Supreme Court dismissed the notice of appeal as untimely on April 18, 2007. [*See id.*] Petitioner filed a motion to reinstate the appeal, dated April 30, 2007 [Doc. 74-17], and the Supreme Court granted the motion and reinstated the appeal on May 21, 2007 [Doc. 74-18].

On June 20, 2008, Robert M. Dudek, Deputy Chief Appellate Defender for Capital Appeals for the South Carolina Commission on Indigent Defense, filed on Petitioner's behalf a *Johnson* petition[7] for writ of certiorari in the South Carolina Supreme Court. [Doc. 74-19.] The petition asserted the following as the sole issue presented:

> Whether defense counsel was ineffective for not objecting to Detective Bloxom's volunteered testimony that the police did not do a gun residue test on petitioner following his arrest because they were served notice petitioner had retained counsel and that they could not talk to him or touch him since this was an impermissible comment on petitioner's exercise of his constitutional right to counsel and to remain silent?

[*Id.* at 3.] At the same time he filed the *Johnson* petition, Dudek submitted a petition to be relieved as counsel. [*Id.* at 14.] The court advised Petitioner of his right to file a pro se response to the petition for writ of certiorari [Doc. 74-21], and Petitioner submitted pro se responses dated August 2, 2008 [Docs. 74-22 at 1 through 74-23 at 1; 74-23 at 3–9], August 7, 2008 [Doc. 74-23 at 32–44], September 15, 2008 [*id.* at 46–63], January 20, 2009 [Docs. 74-23 at 65 through 74-24 at 2], January 31, 2009 [Doc. 74-23 at 11–17],

---

[7] Like an *Anders* brief, a *Johnson* petition concedes the appeal has no merit. *See Johnson v. State,* 364 S.E.2d 201 (S.C. 1988).

February 1, 2009 [Doc. 74-24 at 19–21, 23–26], and February 24, 2009 [*id.* at 28–60]. The court denied the petition and granted counsel's request to be relieved on July 9, 2009 [Doc. 74-25] and remitted the matter to the lower court on July 29, 2009 [Doc. 74-26].

**State Habeas Petitions**

Petitioner filed a petition for writ of habeas corpus on October 14, 2009, in the South Carolina Supreme Court, alleging he was being held in custody unlawfully because of the ineffectiveness of trial counsel and appellate counsel and court error. [Doc. 74-27.] The petition was denied on November 4, 2009 [*see* Doc. 74-28 at 1], and Petitioner filed a notice of appeal, dated November 18, 2009 [Doc. 74-28]. The Supreme Court construed Petitioner's notice of appeal as a petition for rehearing and denied the petition on December 2, 2009. [Doc. 74-29.]

Petitioner filed another petition for writ of habeas corpus on December 22, 2009, in the South Carolina Supreme Court, again alleging he was being held in custody unlawfully due to the ineffectiveness of trial counsel and appellate counsel and court error. [Doc. 74-30.] On March 4, 2010, the Supreme Court denied the petition. [Doc. 74-31.]

Petitioner filed another petition for writ of habeas corpus, dated May 20, 2010,[8] in the South Carolina Supreme Court, again alleging he was being held in custody unlawfully due to the ineffectiveness of trial counsel and appellate counsel and court error. [Doc. 74-32.] On June 9, 2010, the Supreme Court denied the petition. [Doc. 74-33.] Additionally, on June 9, 2010, the Supreme Court issued an order restricting Petitioner's ability to file

---

[8]The copy of Petitioner's third state petition for writ of habeas corpus submitted to the Court is not a time-stamped copy. Accordingly, there is no evidence before the Court of the actual filing date of this petition. For purposes of the motion for summary judgment and construing the facts in the light most favorable to Petitioner, the Court will construe this petition as having been filed on May 20, 2010, the date Petitioner signed the petition. [*See* Doc. 74-32 at 1.]

additional petitions based upon "the repetitive and frivolous nature" of his numerous petitions. [Doc. 74-34.]

**Federal Habeas Petition**

As previously stated, Petitioner filed an Amended Petition [Doc. 32], motions for extension of time to submit the remainder of his grounds for relief [Docs. 33, 42], and multiple supplemental filings adding grounds for relief to his Amended Petition [Docs. 38, 40, 41]. In his Amended Petition, Petitioner raises the following grounds for relief, quoted substantially verbatim:

**Ground One**: Ineffective Assistance Of Trial Counsel.

*Supporting facts*: Counsel was ineffective for failing to request a sup[p]ression hearing to prevent the admission of the gun into evidence where the gun was seized during a war[r]antless search of my temporary residence that violated the Fourth Amendment (along with 5th & 14th) and Article I §§ 10 & 3 of the South Carolina Constitution, of a prohibition against an unreasonable search & seizure, and Petitioner thereof.

**Ground Two**: Ineffective Assistance Of Trial Counsel.

*Supporting Facts*: Counsel was ineffective for failing to make motion in limine prior to the start of trial to restrict the presentation of evidence of the circumstances surrounding Petitioner's arrest as this evidence was irrelevant to the charged crime and highly prejudicial to him. Counsel was further ineffective for failing to object to the evidence each time it was offered in order to preserve the issue for appeal.

**Ground Three**: (1) Ineffective Assistance Of Trial and (2) Appellate Counsel and (3) error of the Court.

*Supporting facts*: Petitioner was convicted of murder and possession of a firearm during the commission of a violent crime following the shooting of decedent. The jury was charged with the offenses of murder, and involuntary manslaughter, as well as "accident-defense". Of special significance was the jury instruction that

18

permits an inference of malice from the use of a deadly weapon. Because the evidence presented a jury question on "accident-defense", Petitioner asserts it was error to charge the jury that it may infer malice from the use of a deadly weapon. Counsel was ineffective for not objecting to the "court's erroneous malice charge" to preserve it for appellate review.

**Ground Four**:        Ineffective Assistance Of Trial and Appellate Counsel; error of the Court.

*Supporting facts*:        Counsel was ineffective for failing to object to the trial court's circumstantial evidence charge to the jury where the instruction constituted a burden shifting instruction and was misleading. The defective reasonable doubt instruction in combination with the "seek" language contained in the court's circumstantial evidence instruction was not harmless in the Petitioner's case.

Had the "court" given the proper reasonable doubt charge in conjunction with the State's use of circumstantial evidence, the result of the proceeding in all probability would have been different.

**Ground Five**:        Ineffective Assistance Of Trial and Appellate Counsel; court error.

*Supporting facts*:        Trial counsel was ineffective for failing to request a Jackson\Denno hearing to determine the voluntariness of several statements Petitioner allegedly made to law enforcement officers while they were effecting his arrest and for failing to request that the jury be instructed on their determination of the voluntariness of Petitioner's alleged statements.

**Ground Six**:        Ineffective Assistance Of Trial Counsel

*Supporting facts*:        Counsel was ineffective for not producing any witnesses for the Petitioner.

The prejudice: The abs[]ence of witnesses for the Petitioner showed to the jury in all reasonable probability the alleged propensity of Petitioner's guilt.

Petitioner was the "sole-witness" in his trial, shifting the burden of guilt upon him; he having to try to prove his innocence.

Had Petitioner had witnesses on his behalf, there is a reasonable probability that but for Counsel's unprofessional errors, the result of the proceeding would have been different.

**Ground Seven**:        Ineffective Assistance Of Trial Counsel

*Supporting facts*:        Counsel was ineffective for not producing but <u>one</u> (1) <u>exhibit for Petitioner</u>, whereas, there were many more exhibits that should have been shown to the jury. With the additional exhibits, there is a reasonable probability that the fact-finder would have had a reasonable-doubt respecting guilt.

The State Government attorneys produced "<u>17</u>" <u>exhibits for the prosecution</u>.

The deprivation of "exculpatory" exhibits for the Petitioner deprived him of a "<u>fundamentally fair trial</u>", a trial whose result is unreliable.

**Ground Eight**:        Ineffective Assistance Of Trial Counsel & Appellate Counsel

*Supporting facts*:        Counsel was ineffective for not allowing the Petitioner to participate in the selection of the jury and the voir[] dire.

This prejudice of counsel denied the Petitioner his due process rights and the equal protection under the law . . . .

Counsel was ineffective for not consulting with the Petitioner of the "proposed" voir[] dire questions.

Petitioner was not aware of the "proposed" voir[] dire questions "from the defendant" or "counsel's trial-strategy".

Counselor "lied" to the Court when he said that the "proposed" voir[] dire questions "came from the defendant" (Petitioner).

The ineffectiveness & prejudice caused Petitioner to be wrongly convicted of the murder charge.

**Ground Nine**:        Ineffective Assistance Of Trial and Appellate Counsel; error of the court.

*Supporting facts*:        Counsel was ineffective for failing to make a motion for <u>severance of the offenses</u> charged of (1) murder and (2) assault with intent to kill.

The trial court was in error for failing to <u>sever sua sponte</u> one count from the other.

The prejudice: (1) State witness Patton testified that she saw the Petitioner shoot the decedent; <u>then at the same trial</u>, she testified that the Petitioner tried to shoot her. (2) Had the indictment for 'assault with intent to kill' <u>been tried separately</u>, the court in all reasonable probability would have granted a 'direct verdict' to it because the government failed to establish those elements of 'AWIK' beyond a reasonable doubt. "<u>Proof</u>" that the government failed to establish those elements of 'assault with intent to kill' beyond a reasonable doubt is that "<u>the jury found the Petitioner not guilty</u>", <u>but</u>, by trying both counts at the same time caused the Petitioner to suffer compelling prejudice from improperly submitting a felony of AWIK, that the government failed to prove at trial, and the jury in all reasonable probability may have been swayed to consider <u>inflammatory evidence</u> with respect to the other charge, of murder.

The <u>verdicts</u> were <u>inconsistent</u>: guilty for murder; <u>not guilty</u> for 'assault with intent to kill'. There was prejudice from the inconsistent verdicts due to the danger of the "<u>spillover-prejudice</u>" because one (1) crime may corroborate commission of other crime.

The evidence of 'AWIK' was prejudicial to the second count of murder. The trial court failed to sever <u>sua sponte</u> one (1) count from the other and "<u>the court</u>" did not instruct the jury "<u>to separate the evidence</u>".

Furthermore, combining both charges was <u>double-jeopardy</u> because <u>elements of both were identical</u>, i.e., malice (wickedness, evil, intent on doing harm); double-jeopardy being constitutionally required.

**Ground Ten**:              Ineffective Assistance Of Trial Counsel

*Supporting facts*:          On the second (2nd) day of Petitioner's criminal-trial, May 28, 1997, an <u>article in the newspaper</u> c[a]me out about Petitioner and his trial which the Petitioner feels prejudiced the jury against him. Petitioner feels the jury in all re[a]sonable probability read that newspaper article that morning before coming back to the trial that same day. Petitioner showed the newspaper to counsel, but, he simply made light of it.

On page 19, Ins 19–21, tor, the court did get to ask the jury the question to number 6 because at that time "the jury had not heard or read anything in the news accounts", but, once Petitioner notified his counsel, (1) - he should have alerted the court of its existence and (2) - requested of the court to read the jury question #6, and (3) - counsel should have requested some sort of a curative instruction to the jury and\or (4) - made a motion to the court for a mistrial; (5) - counsel, should have at least objected to the "untimely news account" to at least preserve it for Appellate Review, and (6) - counsel, should have motioned the court to sequester the jury as evidence came through the local news media through the local newspaper, supra, and television coverage.

**Ground Eleven**:    Ineffective Assistance of Trial and Appellate Counsel; error of the court.

*Supporting facts*:    The <u>court erred</u> when the judge did <u>not</u> do a <u>colloquy</u> with the Petitioner in regard to the Petitioner's <u>competency</u> and the judge should have <u>inquired</u> if there was a <u>prior competency hearing</u> and the <u>court's finding</u> thereof.  (There was <u>no</u> prior <u>competency hearing</u> for the Petitioner.)

Counsel (<u>appellate defender</u>) was ineffective for <u>not</u> entering in the <u>court's error</u> above on behalf of Petitioner's <u>Direct Appeal</u>.

<u>Trial counsel</u> was <u>ineffective</u>:

(1) for <u>not</u> having a <u>competency hearing</u> for the Petitioner;

(2) for <u>not</u> having Dr. Dewitt, <u>Psychiatrist</u>, (who had examined the Petitioner three (3) times), as a <u>witness</u> for the Petitioner, who the doctor could have <u>testified</u> to the Petitioner's <u>competency</u> or the lack thereof, and to the Petitioner's <u>mental condition</u> of <u>P.T.S.D.</u> (post traumatic stress syndrome).

(3) for <u>not</u> having the "<u>other</u>" <u>psychiatrists</u> (Morgan and Montgomery), who were <u>present</u> in the <u>courtroom</u>, to <u>testify</u> on Petitioner's behalf of his <u>competency</u> or the lack thereof, and to the Petitioner's <u>mental condition</u> of <u>P.T.S.D.</u>.

(4) for <u>not</u> having <u>Dr. Dewitt's (above)</u> "<u>Report Of Finding</u>" regarding the "<u>competency evaluation</u>" of the Petitioner as an <u>exhibit</u> on Petitioner's behalf.

22

(5) for <u>not</u> subpeonaing <u>Atty. Soltice</u> (public defender; Peti.'s initial atty.) who <u>hired Dr. Dewitt</u> (above) <u>to testify</u> as to why he thought Peti. needed Dr. Dewitt's professional "<u>expert</u>" services.

<u>Mr. Riddle</u> (prosecutor): "He did have the <u>capacity</u> to conform his conduct to the requirements of the law on the date in question".

Counsel should have objected because a <u>psychiatrist cannot make this determination</u>; it <u>has to be ascertained by a neurologist</u>.

<u>Mr. Swerling</u> (counsel): We can say to the court <u>that there is no issue for competency</u> that the court would have to be concerned about.

On the contrar[y], Dr. Dewitt's prior statement, "Report Of Finding", <u>said that Petitioner was incompetent</u> and <u>that he could not go to trial</u>.

This "<u>Report Of Finding</u>" in all reasonable probability would have established "<u>mitigating evidence</u>" to the charge of murder to the jury, possible affording the Petitioner a <u>manslaughter charge</u> or a charge to the jury on self-defense.

<u>The Court</u>: . . . if there is <u>nothing further</u>, are we ready to bring the jury in?

**Ground Twelve**:          <u>Prosecutorial Error</u> via IAC

<u>Mr. Riddle</u> (prosecutor): The first indictment, ladies and gentlemen, is for murder. I am going to tell you what that is all about. <u>Murder</u> is the killing of another individual with <u>malice</u>.

<u>Argument</u>

Both murder and manslaughter are intentional and deliberate unlawful killings of another individual. Both are done with malice, i.e., intent, evil, wickedness. One of the distinctions between the two is that murder is the unlawful killing of another individual with malice "<u>aforethought</u>", dissipating "in the heat of passion with sudden sufficient legal provocation".

By the prosecutor telling the jury that murder is the killing of another individual with "malice <u>alone</u>" is saying that murder and manslaughter are synonymous, i.e., one and the same.

So, therefore, had the jury thought that the Petitioner was guilty of manslaughter and not murder, they could have inferred from the solicitor's comments of "malice <u>absent</u> "aforethought, that the Petitioner was equally as well guilty of murder.

<u>The Court</u>: Yes, sir.  Also, let me, let you, see this note the jury has sent.

<u>The Court</u>: They have just said, "Is there any other crime possible between?"

The jury showed doubt that the Petitioner was guilty of "<u>malice aforethought</u>".

Counselors were ineffective, prejudicing the Petitioner, by not objecting to the prosecutor's "erroneous-malice-<u>absent</u>-aforethought-comments" to the jury and the court erred by allowing the prosecutor to "erroneously define murder".

**Ground Thirteen**:  Ineffective Assistance Of Trial and Appellate Counsel; error of the court.

*Supporting facts*:  Lee Barry, general manager of the business of Petitioner's employment and <u>residence</u>, could have testified if he did or did not give Officer Kelly Bloxom, West Columbia Police Dep't. Investigator, (W.C.P.D.), permission to conduct a search of the premises for the weapon, instead of Bloxom giving "<u>inadmissible-hearsay testimony of "alleged" 3rd party consent</u>".

<u>Court</u>: Now, after Mr. Stutts was apprehended, what did you do?

<u>Bloxom</u>: With the permission of the general manager . . .

<u>Court</u>: Who is?

<u>Bloxom</u>: Lee Barry.  I conducted a search of the premises for the weapon.

<u>Court</u>: You went in the "<u>house</u>"; is that correct?

<u>Bloxom</u>: Yes, sir.

**Ground Fourteen**:   Ineffective Assistance Of Trial Counsel

*Supporting facts*:   ("<u>implausible-defense by counselors</u>")

Under the pre-AEDPA analysis, counselors were ineffective in Petitioner's murder case for failing to adequately consult with Petitioner.

Counselors never discussed trial strategy <u>or</u> possible defense witnesses.

Counselor's conduct was deficient because counselor's failed to make the reasonable decision not to explore the possibility of calling witnesses to testify on the behalf of the Petitioner.

Prejudice was found because the inadequate preparation and investigation led to the decision to mount an "<u>implausible defense</u>" that the defendant (Petitioner) could not have killed the decedent because they were "<u>friends</u>".

**Ground Fifteen**:   Ineffective Assistance of trial & appellate counsel; Court error.

*Supporting facts*:   <u>Sua Sponte Manslaughter</u>

<u>The Court</u>: Yes, sir.  Also, let me let you see this note the jury has sent.

<u>Mr. Swerling</u>: Judge, the other thing with respect to that note. The only thing I would observe about that is that when the Court tells them <u>no</u> . . .

<u>The Court</u>: The[y] have just said, "<u>Is there any other crime possible between</u>?"  I will tell them as to that charge on that first page they have got murder, guilty or not guilty, involuntary manslaughter, guilty or not guilty.

<div align="center">Argument</div>

The jury, in essence, was asking for a manslaughter charge;

<u>The Court</u>: Of course, the ultimate decision <u>as to what the evidence shows</u> and what inferences should be drawn from the

evidence <u>is your decision</u>, ladies and gentlemen, and yours alone.

Surely they, the jury, doubted malice aforethought . . .

At this point and time, Counselors should have requested and properly litigated a manslaughter charge sua sponte. In all reasonable probability, the outcome of the trial would have been different; the prejudice, Counselors were ineffective pursuant to <u>Strickland</u>, supra; <u>Butler</u>, supra; <u>Croinic</u>, supra.

The judge, sua sponte, could have given the Petitioner a manslaughter charge, but, with counselor telling the judge "<u>no</u>", the judge acquiesced, and should not have.

By the judge not giving the Petitioner a manslaughter charge sua sponte (after the jury in essence asked for one)(showing doubt of malice) was "plain error of the Court).

Plain error is recognized by the Fourth Circuit of Virginia, and the Supreme Court of the United States.

**Ground Sixteen**:    Ineffective Assistance of trial & appellate counsel; court error.

*Supporting facts*:    (King Charge or lack thereof)

<u>The Court</u>: Yes, sir. Also, let me let you see this <u>note the jury has sent</u>.

They have just said, "<u>Is there any other crime possible between</u>?"

We have gotten a note from the jury saying, "<u>At this time we are deadlocked</u>".

Although <u>I didn't get into a detailed discussion of the King Charge</u>, I think I referenced that as part of the overall charge that they were to consider . . .

<u>Argument</u>

<u>King Charge</u> is an instruction that if jury has reasonable doubt between offenses of murder and manslaughter, it <u>must</u> resolve doubt in defendant's favor.

26

The trial judge did not clearly and correctly instruct the jury, that, if they had a <u>reasonable doubt</u> as to whether the Petitioner was guilty of murder or involuntary manslaughter, <u>it was their duty to resolve that doubt in his favor</u>, and find him guilty <u>of the lesser offense</u>.

It is plain that the rule of reasonable doubt requires that a defendant charged with murder, be extended the benefit of that doubt, when <u>it is questionable</u> that the crime committed by him was murder or involuntary manslaughter.

The trial judge erred when he <u>revisted</u> the King Charge giving a <u>short instruction</u> without the <u>accompanying language</u> being unfair to the jury for <u>lack</u> of a <u>clear</u> and <u>correct charge leaving the jury without no guidance</u>.

<u>Counselors were ineffect[ive] for not</u> objecting to the <u>erroneous</u> King Charge to preserve it for <u>appellate review</u> and for <u>not</u> asking the Court for <u>curative instructions</u>.

<u>It was questionable</u> that the crime committed by the Petitioner was murder or involuntary manslaughter <u>as the jury showed reasonable doubt</u> when they submitted the <u>note</u> to the Court.

<u>The Court</u>: "They have just said, "<u>Is there any other crime possible between</u>?"

Additionally, <u>the jury</u> was <u>never instructed</u> on <u>their use</u> of this <u>evidence</u>.

**Ground Seventeen**:   Ineffective Assistance Of Trial Counsel.

*Supporting facts*:   <u>Issue</u>: "<u>Out of Court Statement</u>".

Under <u>Roberts</u>, an out-of-court "<u>nontestimonial</u>" statement not subject to prior cross-examination could not be admitted without judicial determination regarding reliability.

Judgment of the Supreme Court of Ohio: "<u>Reversed</u> and <u>Remanded</u>".

Under <u>Crawford</u> on the other hand, the "<u>Confrontation Clause</u>" has no application to such statements and therefore permits their admission, even if they <u>lack "indicia of reliability"</u>.

27

Petitioner maintains that he was up under the law of <u>Roberts</u> as he was arrested May 1994, tried and convicted May 1997.

**Ground Eighteen**:     Ineffective Assistance Of Trial Counsel.

*Supporting facts*:     The Solicitor was right beside the witness, but, he had difficulty in hearing her on "numerous" occasions, whereas, Petitioner was way across the courtroom and could not hear most of her testimony, (as she was the State's eye-witness to the crime scene) depriving Petitioner of a fundamentally fair-trial. Petitioner alerted counsel that he could not hear the testimony at his trial, but, counsel responded that he (Petitioner) did not need to hear, only counsel needed to hear.

Counsel complained to the court that he could not see the diagram of the state in order "to understand the diagram", so, therefore, Petitioner who was way across the court room at the defense table could not see either, in order to help in his defense.

Such a complete lack of pretrial preparation (providing Petitioner the opportunity "to hear" and "to see" his trial) puts at risk both the defendant's "right" to an ample opportunity to meet the case of the prosecution <u>and</u> the reliability of the adversarial testing process.

**Ground Nineteen**:     Ineffective Assistance Of Trial Counsel

*Supporting facts*:     Counselors were prejudicially ineffective for not having the Petitioner a "<u>trajectory expert</u>" for his defense to lay a foundation as to the paths of the bullets fired at the crime scene.

It was fatally prejudicial to the Petitioner not to have a trajectory expert because the State Government and their witnesses gave "<u>conjecture</u>" and "<u>speculation</u>" as to their bias and prejudicial opinion as to the paths of the bullets fired denying the jury the truth.

**Ground Twenty**:     Ineffective Assistance Of Trial & Appellate Counsel; Error of the Court; Due Process\Equal Protection of the Law Violation by the State Of South Carolina.

*Supporting facts*:     Petitioner's right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and

Article I § 3 of the South Carolina Constitution was violated by the State of South Carolina, Trial and Appellate Counsel, when Petitioner was denied his constitutional right to a "speed-trial" pursuant to the Sixth Amendment to the United States Constitution and Article I § 14 of the South Carolina Constitution.

**Ground Twenty-one**: Ineffective Assistance of Trial & Appellate Counsel; error of the court.

*Supporting facts*: Trial judge did <u>not</u> answer the jury's question below:

The Court: Yes sir. Also, let me let you see this note the jury has sent.

The Court: They have just said, "<u>Is there any other crime possible between</u>?"

It was manifest error for the trial court to respond by simply restating its previous charge on "that first charge" [murder] and "involuntary manslaughter".

The trial judge did <u>not</u> answer "the question that the jury asked the court"; court\judge erred.

And, his lack of a response to "the jury's question" was misleading and confusing.

The trial judge charged "the jury" on the crimes of murder, involuntary manslaughter, <u>but</u>, <u>not</u>, "<u>the defenses of accident</u>" and "<u>the accompanying language of self-defense</u>".

The trial judge did not say to "the jury" that "manslaughter" was the other crime between murder and involuntary manslaughter.

**Ground Twenty-two**: Ineffective Assistance of Trial & Appellate Counsel; error of the court.

*Supporting facts*: Trial counsel was ineffective for not requesting "a <u>self-defense</u> <u>charge</u> from the court. The trial court should have found a sufficient scenario to justify a self-defense charge based on the testimony of the witness and the defendant.

The court found Petitioner was lawfully armed in self-defense at the time of the shooting because, Petitioner took the loaded

gun from Patton, who was now, threatening him with it, after, initially, being threatened by Greenwood, with the same loaded gun, saying, "I will kill you", to the defendant. There was also evidence Petitioner "recklessly" and "accidentally" handled the gun because, according to his testimony, it fired almost immediately after he took possession of it.

A self-defense charge is required if it is supported by the evidence, and Petitioner met the criteria of all "four elements" of self-defense", as he was awarded an "accident-charge" based on those "four elements". If there is any evidence in the record to support self-defense, the issue should be submitted to the jury. However, a self-defense charge and an involuntary manslaughter charge are not mutually exclusive as long as there is any evidence to support both charges, as it is improper to hold that any evidence of an intentional shooting negates evidence from which any other inference may be drawn. (Petitioner had the charges of: murder, involuntary manslaughter and accident-defense.)

Petitioner was entitled to a self-defense charge because there was testimony concerning self-defense in the trial record.

When there is a factual issue as to whether the shooting was committed intentionally in self-defense or was committed unintentionally, then the defendant is entitled to both charges as there is "any evidence" to support each charge.

When there is evidence of both, the jury is entitled to resolve the question of how the shooting actually occurred. Petitioner was entitled to the charges of self-defense and involuntary manslaughter.

[Doc. 32 at 5–54 (internal citations omitted) (emphases in original).] On June 29, 2011,

Petitioner filed a document adding the following ground for relief, quoted substantially

verbatim:

**Ground Twenty-three**:     Ineffective Assistant of Trial and Appellate Counsel; error of the Court.

*Supporting facts*:     The trial court erred by allowing graphic descriptions of the medical examiners autopsy procedures when descriptions of those procedures were unnecessary for the medical diagnosis

presented at trial, but, instead were designed to arouse passion and prejudice toward the defendant of the injuries; also, counsel was ineffective for not objecting to the above.

[Doc. 38 at 2.] On August 23, 2011, Petitioner filed a document adding the following grounds for relief, quoted substantially verbatim:

**Ground Twenty-four**:     Ineffective Assistance of Trial & Appellate Counsel; error of the Court.

*Supporting facts*:     Petitioner contends the Court erred in defining "<u>malice</u>" to include the doing of a wrongful act intentionally without any "<u>justification</u>" or "<u>excuse</u>".

Petitioner argues that the jury should have been charged that malice excludes <u>not only</u> "justification" or "excuse", but, also, legally sufficient "<u>provocation</u>".

In the case of Constitutional error, the Supreme Court has stated that a court may label the error harmless only upon determination beyond a reasonable doubt that the error did not contribute to the verdict.

In Petitioner's case the error was <u>not harmless</u>, as even the jury at his trial, saw "<u>the evidence of provocation</u>".

> The Court: "They [jury] have just said, "<u>Is there any other crime possible between</u>?". [between Murder, and Involuntary Manslaughter, which is Manslaughter, and "<u>provocation</u>" is an element, thereof.]

So, therefore, "<u>provocation</u>", should have been in the Court's charge in defining "<u>malice</u>".

Trial counselors were ineffective for <u>not</u> objecting to the erroneous malice charge to preserve it for appellate review, and for <u>not</u> asking the court for curative instructions.

By the judge's erroneous malice charge, he <u>lessen the burden</u> upon the State to prove malice <u>beyond a reasonable doubt</u>.

By the judge[']s erroneous malice charge, he <u>lowered the quantum</u> of proof <u>for the jury</u> to convict the Petitioner.

Additionally, <u>the jury was never properly instructed on their use of this</u> "evidence charge of inference of malice" <u>in determining Petitioner's innocence or guilt.</u>

Last, but, not least, the jury could <u>not</u> consider "<u>provocation</u>" in regard to Petitioner's guilt, but, "<u>they could</u>" for "<u>not guilty</u>". Amen.

<p align="center">Addendum</p>

Counselors were prejudicially ineffective in failing to object to the jury instructions on basis that they created "a mandatory presumption of malice", in violation of the "Due Process Clause"; the challenged instructions constitutionally raised permissive inferences. 14th Amendment, U.S. Constitution. Amen.

"For example, if a person uses a deadly weapon deliberately and intentionally and without just cause or excuse takes the life of another, malice may be inferred from those facts". [but, <u>no</u> "<u>provocation</u>"].

**Ground Twenty-five**:    Ineffective Assistance of Trial & Appellate Counsel; court error.

*Supporting facts*:    Trial counselors were ineffective for failing to request a jury instruction on voluntary manslaughter, when such a charge was supported by the evidence and unopposed by the State.

Trial counselors "all or nothing" strategy, in essence, was to manipulate the jury into an unfair verdict.

The jury openly expressed its desire regarding having a voluntary manslaughter instruction.

<u>The Court</u>: They have just said, "<u>Is there any other crime possible between</u>?" [between Murder, and Involuntary Manslaughter; which was on the court's verdict form; which is Manslaughter; showing the court's doubt of "malice", and, support of "provocation", i.e., "Manslaughter".]

It turned out that the verdict was unfair to Petitioner, but, counselors strategy would have been no less invalid if the State had lost the gamble.

Counselors behaviour harmed not only Petitioner, but, also, the jurors, who were required to determine the truth with inadequate information.

Not only were counselors ineffective for not requesting a jury instruction on voluntary manslaughter, but, they also prejudiced the Petitioner by coercing him to do the same.

So, therefore, Petitioner was denied his Fifth, Sixth, and Fourteenth Rights guaranteed by the U.S. Constitution, along with Article I §§ 3 & 14 of the S.C. Constitution because of prejudicially ineffectiveness of trial counselors.  Amen.

[Doc. 40 (internal citations omitted) (emphases in original).] On August 29, 2011, Petitioner

filed a document adding the following grounds for relief, quoted substantially verbatim:

**Ground Twenty-six**:     Ineffective Assistance of trial counsel

*Supporting facts*:        Having allowed evidence of Petitioner[']s actions following the incident, counsel was prejudicially ineffective for failing to present expert psychological testimony on 'Post Traumatic Stress Syndrome Disorder' (PTSD), to explain Petitioner's behaviour following the incident.

**Ground Twenty-seven**:   Ineffective Assistance of trial counsel.

*Supporting facts*:        Counsel was ineffective for failing to object to Investigator Bloxom's impermissible comments on my alleged post arrest silence and right to counsel in order to properly preserve the issue for appeal.

**Ground Twenty-eight**:   Ineffective Assistance of trial counsel.

*Supporting facts*:        Counsel was ineffective for failing to impeach Investigator Bloxom's clearly erroneous, perjurious testimony, that a gunshot residue test (GSR) sample was "<u>not</u>" taken from Petitioner, when, in fact, a sample "<u>was</u>" taken from Petitioner.

. . . Inv. Bloxom states, "The reason that we "<u>didn't</u>" do a GSR on Mr. Stutts [Petitioner] . . . ", whereas, in the preliminary hearing, Inv. Bloxom states, "We "<u>did do</u>" a residue collection [GSR]".

Also, to add insult to injury to Mr. Bloxom's perjurious testimony, and, to counsel's prejudicial ineffective assistance of counsel, the SC Law Enforcement Division (SLED) Forensic Services Laboratory Report clearly shows that they do do or have in hand a GSR kit on Petitioner as visibly seen, "6. One (1) GSR kit", which by having a GSR kit in hand, clearly means that Inv. Bloxom and the West Columbia Police Department did partake in doing a GSR on Petitioner.

Now, as evidence of proof that, that GSR kit, #6, was on Petitioner, you can clearly see, that #7, was done on Pat Greenwood, and, Inv. Bloxom clearly states that they did <u>not</u> do one on Ms. Patton, the mother, as is clearly stated after the question, "What about Mrs. Patton?", he, Inv. Bloxom, responds, "No, not the mother, no, sir.", so, therefore, "#6. One (1) GSR kit", was left obviously for one other person, by all evidence shown from above, and, that person was conclusively the Petitioner.

And, again, after a direct question of, "You did <u>not</u> do a trace metal test [GSR]?", Inv. Bloxom responded, "No, sir, we did <u>not</u> do a GSR, no, sir.", which is <u>not</u> true, and, perjurious, by all evidence shown, and, last, but, not least, counsel did not object to this false testimony, nor, did he impeach Inv. Bloxom's testimony with having, or, should have the knowledge, via Exhibits M & N, in his arsenal.

[Doc. 41 (internal citations omitted) (emphases in original).]   As previously stated, Respondent filed a motion for summary judgment on January 6, 2012 [Doc. 76], which is now ripe for review.

## **APPLICABLE LAW**

### **Liberal Construction of Pro Se Petition**

Petitioner brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).   Pro se pleadings are held to a less

stringent standard than those drafted by attorneys.  *Haines*, 404 U.S. at 520.  Even under this less stringent standard, however, the pro se petition is still subject to summary dismissal.  *Id.* at 520–21.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the petitioner's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Habeas Corpus**

   ***Generally***

   Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett,* 134 F.3d 615 (4th Cir. 1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;  or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 410 (2000).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision," and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011).  Moreover, state court factual determinations are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

### *Procedural Bar*

Federal law establishes this Court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this Court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

### *Exhaustion*

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b)     (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (i) there is an absence of available State corrective process; or
> >
> >        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254. The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. *Id.* § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal, or (2) by filing an application for PCR. State law requires that all grounds for relief be stated in the direct appeal or PCR application. S.C. App. Ct. R. 203; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment. S.C. R. Civ. P. 59(e). Failure to do so will result in the application of a procedural bar to that claim by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266 (S.C. 2007).[9] Further, strict time deadlines govern direct appeal and the filing

---

[9]In *Bostick v. Stevenson*, 589 F.3d 160 (4th Cir. 2009), the Fourth Circuit found that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*, South Carolina courts had not uniformly and strictly enforced the failure to file a motion pursuant to Rule 59(e) as a procedural bar. 589 F.3d at 162–65. Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the Court will

of a PCR application in the South Carolina courts.  For direct appeal, a notice of appeal must be filed and served on all respondents within ten days after the sentence is imposed or after receiving written notice of entry of the order or judgment.  S.C. App. Ct. R. 203(b)(2), (d)(1)(B).  A PCR application must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts.  *Richardson v. Turner*, 716 F.2d 1059, 1062 (4th Cir. 1983); *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).  Therefore, in a federal petition for habeas relief, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of a PCR application, regardless of whether the Supreme Court actually reached the merits of the claim.

> *Procedural Bypass*

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner seeks habeas corpus relief based on an issue he failed to raise at the appropriate time in state court, removing any further means of bringing that issue before the state courts.  In such a situation, the petitioner has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition.  *See Smith v. Murray*, 477 U.S. 527, 533 (1986).  The United States Supreme Court has stated that the procedural bypass of a constitutional claim in earlier state

---

not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

proceedings forecloses consideration by the federal courts. *See id.* Bypass can occur at any level of the state proceedings if a state has procedural rules that bar its courts from considering claims not raised in a timely fashion. *Id.*

The Supreme Court of South Carolina will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. *See* S.C. Code Ann. § 17-27-90; *Aice v. State*, 409 S.E.2d 392, 394 (S.C. 1991). Further, if a prisoner has failed to file a direct appeal or a PCR application and the deadlines for filing have passed, he is barred from proceeding in state court. S.C. App. Ct. R. 203(d)(3), 243. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. *See Reed v. Ross*, 468 U.S. 1, 11 (1984); *see also Kornahrens v. Evatt*, 66 F.3d 1350, 1357 (4th Cir. 1995). As the United States Supreme Court explained:

> . . . [State procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed*, 468 U.S. at 10–11.

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477

U.S. 478, 496 (1986).  Further, if the petitioner does not raise cause and prejudice, the court need not consider the defaulted claim.  *See Kornahrens*, 66 F.3d at 1363.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  *Coleman v. Thompson*, 501 U.S. 722, 731–32 (1991).  Absent a showing of cause and actual prejudice, a federal court is barred from considering the claim.  *Wainwright*, 433 U.S. at 87.  In such an instance, the exhaustion requirement is technically met, and the rules of procedural bar apply.  *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *Matthews*, 105 F.3d at 915 (citing *Coleman*, 501 U.S. at 735 n.1; *Teague*, 489 U.S. at 297–98; *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this Court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances—where a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or where a "fundamental miscarriage of justice" has occurred, *Murray*, 477 U.S. at 495–96.  A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim, where the novelty of the constitutional claim is such that its legal basis is not reasonably available to the petitioner's counsel.  *Id.* at 487–89; *Reed*, 468 U.S. at 16.  Absent a showing of "cause," the court is not required to consider "actual prejudice."  *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995).  However,

if a petitioner demonstrates sufficient cause, he must also show actual prejudice to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. *Engle v. Isaac*, 456 U.S. 107, 134–35 (1982).

As an alternative to demonstrating cause for failure to raise the claim, the petitioner must show a miscarriage of justice. To demonstrate a miscarriage of justice, the petitioner must show he is actually innocent. *See Murray*, 477 U.S. at 496 (holding a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of someone who is actually innocent"). Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To pass through this actual innocence standard, the petitioner's case must be truly extraordinary. *Murray*, 477 U.S. at 496.

### Statute of Limitations

Under the AEDPA, petitioners have one year to file a petition for writ of habeas corpus. 28 U.S.C. § 2244(d)(1). The limitations period runs from the latest of four dates:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* § 2244(d)(1)(A)–(D).  However, the statute tolls the limitations period during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  *Id.* § 2244(d)(2).

An application for post-conviction or other collateral review is not properly filed if the application is untimely under state law.  *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." (alteration in original)).  In *Pace*, the United States Supreme Court held that time limits on filing applications for post-conviction or collateral review are filing conditions, no matter the form of the time limit.  *Id.* at 417.  Therefore, if an application for post-conviction or collateral review is barred by a state statute of limitations, statutory tolling under § 2244(d)(2) does not apply because the application was not properly filed.

The Supreme Court recently recognized that the limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from timely filing his habeas petition.  *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace*, 544 U.S. at 418).  Therefore, "specific circumstances . . . could warrant special treatment in an appropriate case" such that the limitations period is not strictly applied.  *Id.* at 2563.

## DISCUSSION

Respondent contends the Petition is time-barred pursuant to § 2244(d)(1).  [Doc. 74 at 28–33.]  The Court agrees.

**Expiration of Limitations Period**

The South Carolina Supreme Court issued remittitur in Petitioner's direct appeal on January 13, 1999.  [Doc. 74-11.]  Consequently, Petitioner had one year from April 13,

1999, ninety days after remittitur was issued in his direct appeal, to file a federal habeas petition. 28 U.S.C. § 2244(d)(1); *Holland*, 130 S. Ct. at 2558; *Jimenez v. Quarterman*, 555 U.S. 113, 120 (2009). Petitioner filed a PCR application on October 28, 1999 [App. 439–87], such that 198 days of the one-year limitations period had expired before Petitioner filed his PCR application. The one-year period in which to file a federal habeas petition is tolled during the pendency of a PCR application or other collateral relief properly filed in state court, 28 U.S.C. § 2244(d)(2), and Respondent concedes the statute of limitations was tolled during the period the PCR application was pending—from October 28, 1999 until July 29, 2009, when the South Carolina Supreme Court issued remittitur in the appeal from the denial of Petitioner's PCR application [Doc. 74-26]. Therefore, the one-year limitations period began to run again on July 29, 2009.

Petitioner filed a petition for writ of habeas corpus in the South Carolina Supreme Court on October 14, 2009 [Doc. 74-27], such that 77 additional days of the limitations period had expired between when the Supreme Court issued remittitur in the appeal from the denial of Petitioner's PCR application and when Petitioner filed his first state habeas petition. Accordingly, at the time Petitioner filed his first state habeas petition, a total of 275 days of the one-year limitations period had expired because 198 days had expired before Petitioner filed his PCR application and 77 days had expired between remittittur in his PCR appeal and the filing of his first state habeas petition. Although a state habeas petition is outside the normal remedies procedure, it is a collateral action challenging the conviction and tolls the federal time period. *See Wall v. Kholi*, — U.S. —, —, 131 S.Ct. 1278, 1284 (2011) (stating "it is well accepted that state petitions for habeas corpus toll the limitation period" (citing *Rhines v. Weber*, 544 U.S. 269, 272 (2005))). Accordingly, the statute of

limitations was tolled during the pendency of Petitioner's first state habeas petition—from October 14, 2009 until December 2, 2009, when the South Carolina Supreme Court denied the petition for rehearing and denied the petition. [Doc. 74-29.] Therefore, the one-year limitations period began to run again on December 2, 2009.

Petitioner filed a second petition for writ of habeas corpus in the South Carolina Supreme Court on December 22, 2009 [Doc. 74-30], such that twenty additional days of the limitations period had expired between when the Supreme Court denied Petitioner's first state habeas petition and when Petitioner filed his second state habeas petition. Accordingly, at the time Petitioner filed his second state habeas petition, a total of 295 days of the one-year limitations period had expired because 198 days had expired before Petitioner filed his PCR application, 77 days had expired between remittitur in his PCR appeal and the filing of his first state habeas petition, and 20 days had expired between the denial of his first state habeas petition and the filing of his second state habeas petition. The statute of limitations was tolled during the pendency of Petitioner's second state habeas petition—from December 22, 2009 until March 4, 2010, when the South Carolina Supreme Court denied the petition. [Doc. 74-31.] Therefore, the one-year limitations period began to run again on March 4, 2010 and expired 70 days later on May 13, 2010.

Petitioner filed a third petition for writ of habeas corpus[10] in the South Carolina Supreme Court, dated May 20, 2010 [Doc. 74-32], after the limitations period had expired. Therefore, Petitioner's third petition for habeas corpus filed in state court did not toll the one-year AEDPA limitations period because the limitations period had already expired, and the Petition—filed on January 21, 2011, more than six months after the expiration of the limitations period—is time-barred.[11]

**Equitable Tolling**

Petitioner has failed to demonstrate he is entitled to equitable tolling. The limitations period may be equitably tolled if the petitioner shows (1) he has been diligently pursuing his rights and (2) some extraordinary circumstance stood in his way, preventing him from

---

[10]Although Petitioner alleges he filed his state habeas corpus petitions "starting on Oct. 12, 2009, ending on Dec. 09, 2010" [Doc. 32 at 15] and Respondent notes Petitioner filed multiple cases in both the South Carolina Supreme Court and the South Carolina Court of appeals [Doc. 74 at 19, n.1], Respondent states it has identified only three state habeas petitions that appear to address the challenge of the convictions at issue in this action [*id.*]. Nowhere in Petitioner's responses in opposition to the motion for summary judgment does he challenge Respondent's classification of his numerous state filings, including that only three address the challenge of the convictions at issue in this action, or provide the Court with another state habeas petition he contends should toll the limitations period. In fact, Petitioner does not appear to challenge that his Amended Petition is time-barred, but instead argues he is entitled to equitable tolling, as discussed below. Accordingly, the Court finds only these three state habeas petitions toll the limitations period.

[11]These statute of limitations calculations are based on the filing date of the original filing in this case. However, as previously stated, Petitioner indicated he did not originally intend to submit a petition for writ of habeas corpus pursuant to § 2254 because he had many other issues to raise. [Doc. 12; *see supra* note 1.] Subsequently, Petitioner moved for additional time to prepare his federal habeas corpus petition so he could keep the same civil action number. [Doc. 28; *see supra* note 1.] Petitioner's Amended Petition has a *Houston v. Lack* filing date of June 20, 2011. [Doc. 32-1 (envelope marked received by the prison mailroom on June 20, 2011).] This filing date extends the time calculations even further, by approximately six months, because none of the claims relate back to the original filing. *See Mayle v. Felix*, 545 U.S. 644, 650 (2005) ("An amended habeas petition, we hold, does not relate back (and thereby escape the AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth."); *Gray v. Branker*, 529 F.3d 220, 242 (4th Cir. 2008) (holding the "district court properly dismissed Gray's additional ineffective assistance of counsel claim as barred by the statute of limitations" where the claim admittedly did not relate back to allegations in the original petition); Fed. R. Civ. P. 15(c)(B) (stating an amendment to the pleadings "relates back" where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading . . . ."). Therefore, even considering the filing date of his federal habeas petition in the light most favorable to Petitioner, the Petition is time-barred.

timely filing his habeas petition. *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418). Liberally construing the Amended Petition, its amendments, and Petitioner's responses in opposition to Respondent's motion for summary judgment, the Court concludes Petitioner alleges he is entitled to equitable tolling because he is seriously ill, suffering from obsessive control disorder, depression, post traumatic stress syndrome, and chronic anxiety, which delays his ability to do legal work [Doc. 85 at 2–3]; multiple alleged constitutional violations have deepened his mental illnesses, further affecting his ability to litigate [Doc. 98]; and he did not know of the disposition of his direct appeal because the state court never responded or acted on his motion to alter or amend in the direct appeal [Doc. 95]. Petitioner further asserts he should be excused from any bar because he can show cause, actual prejudice, and/or actual innocence. [Docs. 85 at 1; 91[12]; 95 at 1; 98.]

In *Harris v. Hutchinson*, the Fourth Circuit noted that equitable tolling "has been applied in 'two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" 209 F.3d 325, 330 (4th Cir. 2000) (quoting *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). The court stated,

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective

---

[12]In this response in opposition to the motion for summary judgment, Petitioner recites issues related to his miscarriage of justice claim. Petitioner added additional issues to this claim in Docket Entry Numbers 105, 106, and 107.

> notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.
>
> . . .
>
> Harris argues that equitable considerations justify tolling in his case because the missed deadline was the result of an innocent misreading of the statutory provision by his counsel. While we agree that the mistake by Harris' counsel appears to have been innocent, we cannot say that the lawyer's mistake in interpreting a statutory provision constitutes that extraordinary circumstance external to Harris that would justify equitable tolling.

*Id.* (internal quotation marks and citations omitted).

Upon review, the Court finds Petitioner has failed to show any extraordinary circumstances beyond his control or external to his own conduct that prevented him from filing within the limitations period or that Respondents contributed in any way to his delay in filing his Petition. First, with respect to Petitioner's allegations that his mental illnesses and alleged constitutional violations deepening his mental illnesses have prevented him from litigating this action, the Court declines to find the statute of limitations should be tolled. "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004). "[P]roof of an existing mental illness, or claims that a petitioner is taking psychiatric medication or is under psychiatric care will not automatically warrant equitable tolling." *Robison v. Hinkle*, 610 F. Supp. 2d 533, 539 (E.D. Va. 2009); *see also McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008) ("[M]ental incompetence is not a per se reason to toll a statute of limitations."). In addition to

demonstrating that a petitioner is incapacitated by mental illness or the side effects of psychiatric medications, "[a] petitioner must also allege facts sufficient to demonstrate the existence of 'a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing.'"  *Robison*, 610 F. Supp. 2d at 539–40 (quoting *Rios v. Mazzuca*, 78 F. App'x 742, 743 (2d Cir. 2003)).  Here, Petitioner has not demonstrated he was incapacitated due to a mental illness or that this caused his filing to be late.  To the contrary, Petitioner has had no problem filing documents throughout the appellate, PCR, state habeas, and federal habeas processes, as he has filed two pro se briefs in his direct appeal, a pro se PCR application, at least five amendments to his PCR application, two motions to alter or amend the denial of his PCR application, two notices of appeal from the denial of his PCR application, a motion to reinstate the appeal of the denial of his PCR application, at least seven pro se responses to the petition for writ of certiorari from the denial of his PCR application, at least three state habeas petitions, a federal petition, and at least two supplements to his federal petition.  Accordingly, the Court is unable to find the limitations period should be tolled due to Petitioner's alleged mental illnesses.

With respect to Petitioner's argument that he did not know of the disposition of his direct appeal because the state court never responded or acted on his motion to alter or amend in the direct appeal,  the Court declines to find the statute of limitations should be tolled.  To the extent Petitioner alleges he did not know of the disposition because his direct appeal attorney failed to answer letters asking about the disposition, neither attorney error nor ineffective assistance of counsel constitutes an extraordinary circumstance that justifies a court's invocation of equitable tolling.  *Rouse v. Lee*, 339 F.3d 238, 248–49 (4th Cir.

2003). Additionally, Petitioner has not provided the Court with any evidence to support his position. Although Petitioner alleges he "wrote his Direct Appeal Attorney (Savitz), and the State Supreme Court's Clerk, Davis, [i]nquiring as to his disposition of his Motion, but neither one of them responded to his 'many' letters," [Doc. 95 at 1 (emphasis in original)], Petitioner has not provided anything beyond his own statement, and Respondent has provided a letter from Daniel Shearouse, Clerk of Court, stating his staff searched both the electronic case management system and paper files and could find no record of any earlier correspondence with the Supreme Court [Doc. 74-13]. Based on the record before the Court, the Court is unable to find the limitations period should be tolled.

With respect to Petitioner's argument that equitable tolling should apply because he can show cause, actual prejudice, and/or actual innocence, the Court declines to find the statute of limitations should be tolled. First, the Court notes Petitioner never provides support for his cause and actual prejudice argument, but instead merely states in multiple responses that he will attempt to show cause and actual prejudice. [Docs. 85, 91, 95, 98.] Such statement is insufficient to justify equitable tolling.

For his actual innocence/miscarriage of justice argument, Petitioner provides many factual allegations. [Docs. 91, 105, 106, 107.] Claims of actual innocence are often used to attempt to satisfy the "miscarriage of justice" exception to a procedural default. *See Schlup v. Delo*, 513 U.S. 298, 315 (1995). However, in the context of a motion time-barred under § 2244(d), the Court has doubts as to whether actual innocence provides grounds

for equitable tolling or serves as an exception to the statute of limitations.[13]  Regardless, even if the Court assumes actual innocence provides grounds for equitable tolling, Petitioner has failed to make a sufficient showing of actual innocence.  A petitioner claiming actual innocence "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327).  This "standard is demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quotations and citations omitted) (quoting *Schlup*, 513 U.S. at 327).  Also, Petitioner would have to show "factual innocence, not mere legal insufficiency."  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citations omitted).  Here, Petitioner's arguments have not satisfied this demanding standard.  Petitioner has not set forth any new evidence as required by *Schlup*, instead primarily repeating the allegations of error contained in his Amended Petition and amendments.  Although Petitioner alleges he "can now show, and prove that the Government took the lamp-shade of the lamp, from the scene, that was on the lamp, that was on the entertainment-table, and fired a bullet through the lampshade, at a 45 degree angle to corroborate witness Patton's testimony, and to explain how the couch got shot in the side" [Doc. 91 at 13 (emphases in original)], Petitioner has provided the Court with no evidence to support his averment.  Accordingly, the Court concludes Petitioner has failed to establish actual innocence and, therefore, is not entitled to equitable tolling on such a basis.

---

[13]While "[t]he Fourth Circuit has not expressly ruled that 'actual innocence' is an exception that permits equitable tolling[,] . . . other circuits have reasonably concluded that there is no such exception." *DiCaprio–Cuozzo v. Johnson*, 744 F. Supp. 2d 548, 559 (E.D. Va. 2010) (collecting cases that hold no actual innocence exception to the statute of limitations exists).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Respondent's motion for summary judgment be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 15, 2012
Greenville, South Carolina.